FILED 'SG'
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

07 JAN 18 PM 3:50

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

**Rodney Stewart**
    PLAINTIFF

Vs.

3:07CV25-H

**Classickle Incorporated et al,**
    DEFENDANT

## Complaint

The plaintiff Rodney Stewart, files this pro se civil action against defendant Classickle Inc. Rule 8(a)(2) of the Federal Rules of Civil procedure provides that a complaint shall contain a short and plain statement of the claim showing that the pleader is entitled to relief. This action is brought under the following: The American with Disabilities Act 42 U.S.C. 12101, Section 503 Rehabilitation Act of 1973, Service Contract Act, Davis Bacon Act, Violation of Fair Wage Act, Constructive discharge based on plaintiffs known disability, Defamation of character, Disparate treatment, intentionally failing to provide reasonable accommodation under the ADA, intentional infliction of emotional distress, injurious falsehood, intentionally disparaging another's property interests to the person's economic detriment, Violation of Executive Order 11246, Violation of Civil Rights Act of 1991, pay discrimination, intentional discrimination, breach of an implied contract to be terminated only for good cause and breach of the implied covenant of good faith and fair dealing an action restricted by statute, deliberate indifference for the Congressional intent of ADA, ongoing and continuing present adverse effects from past exposure to [the defendant's] illegal conduct, refusing to approve training opportunities based on disability, Due process violation under the 14th Amendment, The Equal Pay Act, Violation of The Fair Labor Standards Act (FLSA), Retaliation, Unlawfully withholding plaintiff's property, Creating a hostile work environment and Conspiracy to deny Civil Rights.

In **Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997),** the Third Circuit determined that, although the plaintiff was terminated more than two years after he engaged in protected conduct, he still brought forth sufficient evidence that he was "set up to fail" by being placed in a struggling department and ranking his performance under a system described as "sham." Id. at 921-23.

## Jurisdiction

The Court has jurisdiction of this matter under 28 U.S.C. § 1331 as this action arises under the laws of the United States; and under 28 U.S.C. § 1343(a) as this action is brought pursuant to 42 U.S.C. § 12131, 29 U.S.C. § 794, 42 U.S.C. § 12101, *et seq.*, as amended by 42 U.S.C. § 1981(a)

("ADA"), and more particularly 42 U.S.C. § 12117, Venue is proper under 28 U.S.C. § 1391(b) as this matter arose within the Western District of Kentucky.

## Executive Order 11246

The OFCCP **(The Office of Federal Contract Compliance Programs)** enforces Executive Order 11246, which prohibits discrimination by federal contractors on the basis of sex, race, color, religion, and national origin and requires contractors to take affirmative action to ensure equal employment opportunity. It also enforces section 503 of the Rehabilitation Act (imposing anti-discrimination and affirmative action requirements on federal contractors with respect to qualified individuals with disabilities) and the Vietnam- Era Veterans' Readjustment Assistance Act (imposing anti-discrimination and affirmative requirements on federal contractors with respect to Vietnam-era and special disabled veterans of all wars). Nearly one in four American workers works for an employer covered by the Executive Order. Because the Executive Order provides for proactive reviews of contractors' compliance with EEO laws — rather than merely responding to individual complaints of harassment and other forms of discrimination that often go unreported because of victims' legitimate fears of retaliation — it offers an especially valuable enforcement tool.

The Commission, the Attorney General, and the Office of Federal Contract Compliance Programs shall establish such coordinating mechanisms (similar to provisions contained in the joint regulations promulgated by the Commission and the Attorney General at part 42 of title 28 and part 1691 of title 29, Code of Federal Regulations, and the Memorandum of Understanding between the Commission and the Office of Federal Contract Compliance Programs dated January 16, 1981 (46 Fed. Reg. 7435, January 23, 1981)) in regulations implementing this title and Rehabilitation Act of 1973.

## Discussion

**Classickle Inc. is currently a Federal Contractor**, the equal protection clause requires preferential programs based on racial or ethnic criteria to be narrowly tailored to satisfy a compelling governmental interest; as a minority owned corporation Classickle enjoys the fruits of the equal protection clause which gives preferential treatment that favors minority owned businesses to remedy past discrimination in awarding state and federal contracts. However, the government has a compelling interest in assuring that public dollars do not serve to finance private prejudice. The adverse actions taken by defendant is against public policy and concern. It is a public policy to assist the disabled from leaving their dependent life of Social Security and returning to work.

## Article III

In City of Los Angeles v. Lyons

The Court held that plaintiffs seeking to invoke federal court jurisdiction must allege an actual case or controversy to satisfy the threshold requirement found in Article III of the Constitution.

Specifically, plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions."

The fact that Title III's remedies echoed those in Title II of the Civil Rights Act of 1964 showed that" Congress clearly meant not to overburden Title III claimants. In enacting CRA Title II, "Congress evinced its understanding "that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance.'

## Discussion

Congress invoked the full sweep of its authority under the Commerce Clause and the Fourteenth Amendment to accomplish this mandate. The constitutional authority underlying the ADA can be found in the following cases: **Pinnock v. International House of Pancakes Franchisee, et al. 844 F.Supp. 574 (S.D. Cal. 1993), and Abbott v. Bragdon, Civil No. 94-0273-B, 1995 WL 775019 (D. Me. Dec. 22, 1995).** Private Enforcement of the **ADA** Is Vital Given the Enormity of Accessibility Problems and the Justice Department's Limited Authority and Efforts for Ensuring Compliance with the Statute As noted above, courts applying the three-part test for standing rely primarily on two Supreme Court cases which apply the three-part test for standing: **City of Los Angeles v. Lyons and Lujan v. Defenders of Wildlife.** An earlier decision applying that same test to another anti-discrimination statute, however, is also helpful. In [*107] **Trafficante v. Metropolitan Life Insurance**, the Court concluded that it could "give vitality" to the statutory language of the Civil Rights Act of 1968 "only by a generous construction which gives standing to sue to all in the same housing unit who are injured by racial discrimination." In reaching this conclusion, the Court emphasized the Justice Department's limited staff for enforcing the statute and the concurrent importance of **private actions**. The statutory language in **ADA** Title III is remarkably similar to the language in the Civil Rights Act of 1968, and the Department of Justice has only limited staff to enforce not only it, but also Title II and section 504. Accordingly, courts should likewise give it a broad construction in determining standing. In addition, the **ADA** was to serve as a "clear and comprehensive national mandate" to eliminate disability discrimination, and Congress intended for it to have "clear, strong, consistent, enforceable standards addressing discrimination against [disabled] individuals." Id. **(quoting 42 U.S.C. 12101(b)(1)-(2) (2000)).** The "Regarded as having" impairment provision of the ADA is designed to combat erroneous stereotypes that employers may have about impairments that are not, in and of themselves, substantially limiting. Americans with Disabilities Act of 1990, § 3(2)(C), as amended, 42 U.S.C.A. § 12102(2)(C). "A 'qualified individual with a disability' is defined, in relevant part, as:

'An individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.' "Sieberns, 125 F.3d at 1022 (citation omitted); 42 U.S.C. § 12111(8). Both the "disability" and "otherwise qualified individual" inquires involve multifactor tests. As the statute indicates, an impairment only rises to the level of a disability under the ADA if it "substantially limits" one or more of these major life activities. *Id.* "'Substantially limits' means that the person is either 'unable to perform a major life function' or is 'significantly restricted as to the condition, manner, or duration' under which the individual can perform a particular major life function as compared to the **average person in the general population**." *Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 911 (7th Cir.1996) (quoting 29 C.F.R. § 1630.2(j)).

## PRO SE

The Supreme Court has articulated a different, more lenient standard by which courts should assess pleadings prepared by *pro se* **plaintiffs.** "We cannot say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)). Consequently, *pro se* complaints must be liberally construed. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976). In practice, "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. [*1340] Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 81 L.Ed. 2d 59, 104 S. Ct. 2229. All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to plaintiffs." *Epstein v. Wash. Energy Co.,* 83 F.3d 136, 1140 (9th Cir. 1999).

## American with Disabilities Act

The **ADA** has rightfully been hailed as a landmark civil rights act. Congress divided the **ADA** into five sections: private sector employment under Title I; public programs and activities under Title II; public accommodations under Title III; telecommunications under Title IV; and miscellaneous provisions under Title V.

"No qualified individual with a disability shall ... be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity."This same prohibition is applied to private entities through **ADA** Title III, which bars the disability-based denial of the benefits of the services, programs, or activities of "public accommodations."Public accommodations must also make "reasonable modifications in policies, practices, or procedures" and provide "auxiliary aids and services" to ensure access for people with disabilities.

In ***Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002)**, the Supreme Court defined "major life activities" other than working as

"those activities that are of central importance to daily life." The Court also held that to be substantially limiting, impairment must do more than interfere with the activity in a minor way or for a temporary period. "[A]n individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." 534 U.S. at 198, 122 S.Ct. at 691.

Discrimination as proscribed by the ADA encompasses two distinct types: (1) disparate treatment, that is, treating a qualified individual with a disability differently because of the disability, and (2) failure to provide a reasonable accommodation, that is, not making reasonable Accommodation to the known physical or mental limitations of an otherwise qualified individual deliberation. Americans with Disabilities Act of 1990, § 2 et seq., as amended, 42 U.S.C.A. § 12101 et seq.

A Disparate treatment claims under the ADA may be established by direct evidence or the indirect *McDonnell Douglas* burden-shifting method of proof, but a claim alleging a failure to reasonably accommodate will, if proven, directly establish a violation of the ADA. Americans with Disabilities Act of 1990, § 2 et seq., as amended, 42 U.S.C.A. § 12101 et seq.

The pertinent part of the ADA provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

## Statement of Case

On September 6, 2005, plaintiff Rodney Stewart sought employment with Classickle Inc. after being on Social Security Disability Insurance for a total of 12 years. The tenure with Classickle ended on June 20TH 2006. Before hiring plaintiff the defendant was interviewed on or about September 2, 2005. On September 3, 2005 defendant requested a second interview to inquire as to the reason for the long absenteeism from work. At this time Plaintiff was informed of his disability status. Defendant made inquiries as to the extent of his disability. Defendant informed plaintiff that he would be on a two week trial period. This is not Classickle's usual procedure in hiring.

Plaintiff is disabled and is regarded as having substantially limited major life activities as defined by ADA and was subjected to disparate impact and intentional denial of reasonable accommodation by the defendant. The ADA concerns discrimination against persons with disabilities and also prohibits retaliation against persons who have "opposed any act or practice made unlawful" by the statute. Stewart having established that he has a disability and there is reason to believe that the actions of his former employer were related to the disability. Classickle, a Federal Contractor has been given the privilege of working on major federally funded projects

has a responsibility to follow the rules that govern anti-discrimination. Classickle's' termination letter offered to plaintiff had a dual purpose. 1) The separation letter (see Exhibit - A) was written in such a way to guarantee plaintiffs rejection of unemployment compensation, this letter's purpose falls under the Continuing violations doctrine. 2) Stating disparaging comments of plaintiff's performance while employed to affect opportunities for future employment in the engineering arena. A week before plaintiffs' termination, Classickle claimed they needed another computer-aided-draftsman. They hired a non-disabled person for this job- then terminated plaintiffs' employment. However, if Classickle had intended to keep plaintiff employed- (Classickle) would have purchased another Cad (computer license). Defendant waited until they obtained a non-disabled person to do plaintiffs job- then fired Stewart. The firing was a specious premeditated pretext for discrimination (ADA). On or about June 9, 2006, plaintiff came to work and was handed two letters. The first letter stated Stewart was suspended from work for two weeks for allegedly not calling in for missed work. The second letter dated on or about June 10th 2006, stated Stewart was terminated for the reasons mentioned on the June 9th letter. Around mid-summer a non- disabled employee name Randy Gathis was suspended for two weeks for non excused absence from work, additionally, an employee of Classickle named 'Todd' (last name unknown) enjoyed no sanction, suspension or termination for his ailments that required a longer time off from work than plaintiff despite his non-disabled status. However, plaintiff's absenteeism was excused (per Monica Graves, Human Resources Director) based upon the absenteeism was covered by a doctors letter stating plaintiff was hospitalized, thus a protected activity in the form of a reasonable accommodation—covered by the ADA (reasonable accommodation requirement). Rather than allow Stewart suspension as the letter proclaimed, though still illegal, defendant acted in a discriminatory manner and under the pretext of plaintiff not calling in to report missing 3 days of work. Stewart was fired without the benefit of the interactive process of offering an explanation; Classickle refused to return plaintiff's phone call to engage in any type of discussion about plaintiffs rights concerning ADA protection and their obligation to promote an anti-discrimination policy. As a company who demands the right to compete on a even playing field that is free from discrimination; benefits from affirmative action and through legislation and judicial enforcement of aforesaid preferential treatment in pursuing federal and state contracts- based on their status as a minority owned company, the defendant tries to shield themselves from the discriminatory accusations and actions minority owned companies once complained about being subjected to. -- Thus this defendant is well aware of the governments' position on discriminatory actions towards protected persons, companies, or other entities—a minority federal contractor has a heightened awareness on issues regarding unfair

treatment. It is hypocritical of defendant to demand hard fought rights, rights often paid for in blood, yet deny it to others based on his or her disability status. **Section 503** requires affirmative action and prohibits employment discrimination by Federal government contractors and subcontractors with contracts of more than $10,000. Classickle is now working and continues to work on federal contracts well over the statutory minimum of $10,000.

In order to cover up their true intention of discriminatory based disability – the letter stated Classickle intended to write and suspend Stewart for his hospitalization in January 2006; however the letter proclaims they somehow forgot. Nevertheless, their silence was equivalent to a declaration that they were satisfied with Stewart's excused absence; a litigant who refuses to press a point in a timely fashion concedes that point, additionally, the use of expo-facto illegal punishment is highly specious. This issue (expo-facto) specious punishment should be condemned to the stockpile of The Laches Doctrine and studied for timeliness of Stewarts' termination. Additionally, Classickle offer no answer to their argument for postponement of aforementioned "write up"; offering a specious boilerplate, self serving and anachronistic excuse to explain the great delay in raising a 5 months old spurious, moot and conclusionary excuse designed to shield them from litigation. Stewart was terminated (within 1 weeks) only when they found a replacement for Stewart, a person who can use MicroStation (Cad/Cae - engineering software). It is evident Classickle did not want, and in fact did not change or make accommodations in policy, rules or practice to comply with the ADA, In fact the only write up plaintiff received was when Classickle secured a replacement for a disabled person. Randy Gathis, an employee of Classickle, was given preferential treatment regarding a write up he received concerning his absenteeism, the only difference between plaintiff and Gathis is disability and suspicious timing, Gathis is not a protected person and he is not disabled, and yet despite defendant's complaints about both persons "absenteeism" Mr. Gathis still has a job at Classickle Inc. An empty head but a pure heart is no defense. This is prima facia evidence of intentional disability based discrimination. Moreover, the more foreseeable is the plaintiff's ultimate success, the less weight is to be given to the defendant's prospective loss." *Securities and Exchange Commission v. World Radio Mission, Inc.,* **544 F.2d 535, 541-42 (1st Cir.1976).**

Consideration of whether a defendant has abused a position of power is proper in assessing whether conduct is extreme and outrageous. *McGrath v. Fahey*, **126 Ill. 2d 78, 533 N.E.2d 806, 809, 127 Ill. Dec. 724 (Ill. 1988).** "The Restatement mentions police officers, school authorities, landlords and collecting creditors as examples of the many types of individuals who may be positioned to exercise power or authority over a plaintiff." *McGrath,* **533 N.E.2d at 809-10**

(citing Restatement (Second) of Torts § 46, comment e, at 74 (1965)).

## ARGUMENT

It may, perhaps, be fairly questioned, whether any other portion of our population of the earth could have endured the deprivations, sufferings and horrors of disabled persons. Few are more degraded, stereotyped, overlooked and underestimated in the scale of humanity than the disabled. Nothing has been left undone to cripple their intellects, darken their minds, debase their moral nature, obliterate all traces of their relationship to mankind; and yet how wonderfully they have sustained the mighty load of a most frightful bondage, under which they have been groaning for decades."

### McDonnell Douglas Framework

An employment discrimination complaint need not contain specific facts to establish a prima facie case under the McDonnell Douglas framework, but instead need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." All the plaintiff need show is:

1) Membership in a protected group, **Stewart is a disabled person. See Toyota v. Williams**

2) Qualification for the job in question, **Stewart was qualified for the job at issue (Civil engineering tech.)**

3) An adverse employment action, **Stewart was hired on a temporary basis when the employer was made aware of disability; furthermore, Stewart was paid, terminated and pay withheld based on his disability– non disabled persons enjoyed preferential treatment.**

4) Circumstances supporting an inference of discrimination. Specific facts beyond that need not be demonstrated in the complaint. A court may dismiss such a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

Classickle engaged in a difference in hiring policy based on Stewart's disability, thus, implicating the ADA, defendant required plaintiff to state present and past medical condition which led two a two week trial work period prior to a decision to hire; this treatment of trial based employment is the exception and not the rule, this (temporary) status was not required of non- disabled persons.

While in most cases the plaintiff is a "qualified individual with a disability," a person does not have to be so qualified to recover under the ADA section that prohibits discrimination with respect to medical examinations and inquiries. The purpose of that section of the ADA is to tightly regulate most job-related health exams and inquiries to reduce discrimination in employment on that basis. ***Heston v. Underwriters Laboratories, Inc.***, --- F.Supp.2d --- ( 2003 WL 23028437, M.D., N.C., 2003).

The substance of jobs, not their title, is most important. Hence, Classickle failed to comply with

the **Equal Pay Act**. To establish a violation of the Equal Pay Act, the plaintiff need not demonstrate that a job is identical to a higher paid position, but only must show that the two positions are substantially equal in skill, effort, and responsibility.

Classickle refused to change policies and customs for disabled persons to allow reasonable accommodation – implicating the ADA.

**Constructive discharge** means that an employer must have intended or at least reasonably foreseen that the employee would quit as a result of the unlawful working condition it created.

**Defamation of character**: To establish a prima facie case of defamation, the claimant must show six elements: 1) publication, 2) of a defamatory statement, 3) that identifies the claimant, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the claimant's reputation.

Speaking on the interactive process of reasonable accommodation the Seventh **Circuit** holds that:

Properly participating in the interactive process means that an employer cannot expect an employee to read its mind and know that he or she must specifically say "I want a reasonable accommodation, "particularly when the employee has a mental illness. The employer has to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help. ***Bultemeyer,* 100 F.3d at 1285,** Whether the plaintiff has impairment and whether the conduct affected by the impairment is a major life activity under the statute are legal questions. *See **Doebele v. Sprint/United Management Co.,*** 342 F.3d 1117, 1129 (10th Cir.2003).

## Discussion

During the second job interview defendant Tony Sickles inquired as to the nature of my disability with specificity; a clear violation of ADA. After Classickle found out the nature of my disability Mr. Sickles said he needed to discuss my disability issues with Classickle's' attorney, as Classickle has never hired a disabled person and Mr. Sickles stated their were concerns about how my disability would affect Classickle's' workman's compensation status along with other concerns about their hiring a person with a disability. Plaintiff plans to depose Classickle's' attorney during the discovery phase of this action. Therefore, plaintiff prays this court enter an order to wit:

Ordering Classickle's attorney from defending, discussing or representing Classickle in this complaint, as this attorney **will** be called as a witness as well as deposed during the discovery phase, see **Federal Rule Civil Procedure 28(c) Disqualification for Interest.** Additionally, ordering members of Classickle Inc. (Anthony Sickles, Stephanie Sickles (wife of Anthony Sickles and Monica Graves (cousin to Anthony Sickles) from discussing the facts and allegations of this case. Unless this court properly gives these weighty arguments the proper latitude as a "private attorney general" the court will deter protected persons from being bold.

We pray the court uses the laws to set an example to other federal contractors- they discriminate at the risk of losing federal contracts as well as being brought to the bar of justice. The Rehabilitation Act prohibits discrimination on the basis of disability in programs conducted by Federal agencies, in programs receiving Federal financial assistance, in Federal employment, and in the employment practices of Federal contractors. The standards for determining employment discrimination under the Rehabilitation Act are the same as those used in title I of the Americans with Disabilities Act.

A learned judge aptly stated over 130 years ago. As judges, "we cannot shut our eyes to matters of public notoriety and general cognizance. When we take our seats on the bench we are not struck with blindness, and forbidden to know as judges what we see as men." In trying to effect the will of Congress and as a court of equity we have the responsibility to consider the social context in which our decisions will have operational effect. See (*HoAh Kow v. Nunan, C.C.D.Cal., 5 SAWY. 552, 12 Fed.Cas. 252, 255 (No. 6546)(1879)*).

## Argument

We pray the court follow the doctrine of *Stare Decisis* - as there is clear and convincing instruction for inferior courts to follow regarding the Congressional intent governing the ADA laws and applicability regarding this complaint under bar. Additionally, plaintiff prays this Court would consider Supreme Court Chief Jurist, **Earl Warrens** ' view, "It is the spirit and not the form of law that keeps justice alive." Morality in private business has not been sufficiently spurred by morality in public business; an unenforced law creates a growing gap between decision and execution, between planning and reality. The disciplinary action dated June 19th 2006 (See Exhibit – A) states plaintiff will be suspended from work until July 5th 2006 for 'excessive absenteeism' and put on 90 days of probation including, however, the report does not mention the day plaintiff is to start the suspension. The defendant fills out another disciplinary report dated June 20th 2006 (See Exhibit – B); this report terminates plaintiff's employment based on the following:

1) Excessive absenteeism
2) Failure to report to work
3) Insubordination
4) Job abandonment

The failure of defendants to exercise due diligence in notifying plaintiff that a problem existed: A degree of care that a prudent person would exercise legally relevant standards. These reasons given by defendant for termination are highly illogical and borders on the fanciful. If what is said is true, "defendant had excessive absence" from work - it is especially suspicious the defendant conveniently disciplines plaintiff without giving him the benefit of any notice that there was a

problem in the past or present. An Indiana Court explains a similar situation. "The insured shall give immediate written notice of any accident," yet we do not construe the policy contract as requiring the appellee to do an impossible thing, to wit: to give notice of the accident before it knew about it. The language of the policy must be given a reasonable construction. See: **Peele v. The Provident Fund Society et al. (1897), 147 Ind. 543; 44 N.E. 661, 46 N.E. 990; Metropolitan Life Insurance Company v. People's Trust Company (1912), 177 Ind. 578, 98 N.E. 513**. This disciplinary action should not be allowed to stand because this adverse termination by this defendant cannot arise out of a wrong which the defendant committed against the plaintiff; the defendants' demanding and probing inquiries as to the extent of plaintiff's disability before hiring him and while plaintiff was in the hospital. In fact the plaintiff fired plaintiff while plaintiff was in the hospital, resulting in a cessation of contractually owed pay. When plaintiff inquired why this pay was with held – plaintiff was told by Monica Graves (Human Resources Director) "Classickle did not pay salaried employees while off sick and that Stephanie Sickle (Classickle's owner) wanted to fire plaintiff while he was in the hospital for missing too many days, however she could not based upon the inability to find a replacement that could run the specialized software for which plaintiff was hired. This action of planning to fire plaintiff was still brewing despite plaintiffs return to work.

## Discussion

The self serving disciplinary reports see (Exhibits – A, B) are one day apart, if what is alleged against plaintiff in the exhibits is true, legal or possible, these exhibits only bolsters the plaintiffs complaint as defendants dying confession and proves the axiom that an absence of evidence is the evidence of absence and when evidence is not available as unavailable here- then, as here a litigant assumes and personifies the position of the charlatan, as here. Notwithstanding, this plaintiff would be remiss not to examine aforesaid exhibits even exhibits that border on impracticality, arrests logic and holds reason hostage. The exhibits allege plaintiff was fired for excessive absenteeism, Failure to report to work, Insubordination and Job abandonment while at home. Even if only for arguendo sake let suppose this impossibility. Now let us entertain reason; Off-duty conduct or misconduct does not support a finding of "willful misconduct" on the job, furthermore, defendant claims it was Anthony Sickles' (Classickle's owner) intent to write plaintiff up for excessive absenteeism, this adverse reaction to plaintiffs' request for a reasonable accommodation for his the plaintiff's absenteeism while hospitalized. Now! Having entertained impossibility and reason –let's now examine the law regarding temporal proximity. Using

conveniently timed self-serving policies are highly suspicious and spurious – giving greater weight to this argument 'this adverse action is a pretext for discriminatory acts aimed at a disabled person having exercised the right to request a reasonable accommodation for absenteeism and his being fired based upon aforesaid request, There is more than a casual connection between plaintiffs requesting an accommodation and defendants action to terminate his employment. The causal connection is particularly strong illustrating temporal proximity. See **Clark County School District v. Breeden, 532 U.S. 268, 273, 149 L. Ed. 2d 509, 121 S. Ct. 1508 (2001)** (holding that temporal proximity alone may establish causation in certain circumstances). Under this pattern and practice aimed toward this defendant and or other protected persons are highly inflammatory and demonstrates a casual connection between defendants firing of Stewart and his disability. If this action is allowed to stand by this court, it will doom disabled persons to the ignominy of becoming a frozen target to be fired whenever he becomes sick or needs medical attention or worse if he/she should require a reasonable accommodation often resulting in intentional discrimination and retaliation, as is the case here. These actions strip away a choice supported, given and allowed by statute forcing the disabled to choose between sickness or employment, again, a choice defined by statute, namely The American with Disabilities Act. This gives the disabled a lose – lose scenario, heart attack or paycheck, morbidity or money. The only to most potential plaintiffs is to file a complaint with a bogged down governmental agency or attempting the futile attempt to secure an pro bono attorney or – as here filing a federal lawsuit pro se; employers are aware of their superior bargaining (take it or leave it) power over employees – especially the disabled. This is exactly what Congress sought to eradicate by enacting ADA – and giving the courts the honorable and Constitutional power of becoming an avenging angel for the disabled whenever any employer subjects itself to it, the ADA's statutory domain, a federal courts jurisdiction, this right given to the court by Congress. Classickle's attempt to tread on transform and transmogrify disabled persons unasked for right to be sick has triggered the law and her consequences. The Father of This great Country states an obvious- but often overlooked legalism, "The Law is for Lawbreakers." Voltaire points to a more applicable point for the case under bar, "Lady Justice does not bear the sword for nothing"

## Relief Sought

We pray the court grants reasonable and proper relief in the form of Back Pay, Front Pay, Reinstatement, Compensatory Damages, Punitive Damages and any other relief proscribed by law. It is axiomatic that courts confront in all diverse settings, the "age-old problem" of

"providing equal justice for poor and rich, weak and powerful alike." **Griffin v. Illinois, 351 U.S. 12, 16, 100 L. Ed. 891, 76 S. Ct. 585 (1956)**. Plaintiff prays this court looks at the totality of the circumstances and issues a finding of gross neglect/reckless disregard for the aforesaid.

**WHEREFORE**, Plaintiffs pray the Court to issue its **orders, judgments and decrees** for Plaintiffs and against Defendants on the matters and things aforesaid.

Respectfully Submitted,

Rodney Stewart, pro se
1815 West Kentucky Street
Louisville, Kentucky 40210